UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.,

                Plaintiff,

            - against -

FOCUSED ENTERPRISES, LTD.,
d/b/a BROWN SUGAR CLUB and
GREGORY JORDAN, SR. and
JUDY JORDAN,

                Defendants.
----------------------------------------------------X

REPORT & RECOMMENDATION

06-CV-4874 (FB) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiff Garden City Boxing Club, Inc. ("plaintiff" or "Garden City") seeks an award of damages against defendant Focused Enterprises doing business as Brown Sugar Club ("defendant" or "Brown Sugar Club") for alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a) ("FCA"). *See* Complaint at ¶ 1. As a result of defendant's failure to answer the complaint, Garden City moved for default judgment and the Honorable Frederic Block referred the matter to me for a report and recommendation on the issue of damages. For the reasons that follow, I respectfully recommend that plaintiff be granted judgment in the amount of $2,825 against defendant.

I.    Background

    A.    Procedural History

       Garden City filed its complaint on September 6, 2006, and claims to have served Brown Sugar Club on October 20, 2006.[1] Docket Entry 2. Almost twelve weeks later, Brown Sugar

---

[1] Plaintiff did not submit proof of service on individual defendants Gregory Jordan, Sr. And Judy Jordan. Judge Block granted the default judgment with respect to Brown Sugar Club only. Docket Entry 6.

Club had not yet responded to the complaint, and Garden City filed a motion for default judgment. Docket Entry 4. The Clerk noted Brown Sugar Club's default on February 2, 2007. Docket Entry 6. Judge Block granted the default judgment against Brown Sugar Club and referred the matter to me for a report and recommendation on damages and costs. Docket Entry 7. A hearing was held on March 27, 2007, and on that day Garden City submitted a memorandum of law is support of its request for damages.

    B.    <u>Facts</u>

Garden City is a California-based corporation that obtains licenses to distribute pay-per-view events to commercial establishments. Complaint ¶¶ 4, 8-9. As part of its business, Garden City enters into sublicensing agreements with various commercial establishments to allow them to exhibit certain broadcast events to their patrons via closed circuit television and encrypted satellite signal. Complaint ¶¶ 10-11. The particular pay-per-view broadcast at issue in this suit included the "De La Hoya/Hopkins" boxing match of September 18, 2004, and other fights on the undercard that night (the "Event"). Complaint ¶ 8.

On September 18, 2004, Willie Murray, Jr. ("Murray") observed the Event being telecast in the Brown Sugar Club. Plaintiff's Memorandum of Law in Support of Request for Judgment by Default ("Pl's Br.") at 3. According to Murray, there were approximately 20 patrons on the premises of Brown Sugar Club. *Id.* There is no mention of any advertising in or near the establishment.

II.    <u>Discussion</u>

    A.    <u>Liability</u>

Upon the entry of default, a party concedes all well pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d

2

155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)). Garden City's complaint establishes defendant's liability under only one of the statutory provisions cited in the complaint, 47 U.S.C. § 605.[2] Section 605 prohibits the unauthorized interception and publication or divulgence of "any radio communication." *See* 47 U.S.C. § 605(a). Because Garden City alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a). *See Int'l Cablevision v. Sykes*, 75 F.3d 123, 131 & n.5 (section 605(a) applicable to cable theft where intercepted broadcast originated as a radio transmission); *Mama Zee*, at *2.

  B. Damages

Notwithstanding the default, Garden City must still prove its damages if they are neither "susceptible of mathematical computation" nor liquidated as a consequence of the default. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citations omitted); *see* Fed. R. Civ. P. 55(b)(2). To determine the appropriate amount of damages, courts have "the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing." *DirecTV, Inc. v. Perrier*, 2004 WL 941641, *2 (W.D.N.Y. March 15, 2004) (citations omitted).

A claimant who has established liability under § 605(a) may elect to recover either actual damages plus the defendant's profits, if any, or an amount in a statutorily-defined range. *Id.* § 605(e)(3)(C)(I). Garden City has elected the latter. The statutory range for such damages is $1,000 to $10,000 per violation. *See id.* The statute commits to the court's discretion the determination of the specific amount within that range to be awarded. *See id.*; *Mama Zee,* 2002

---

[2] Plaintiff failed to state a claim under 47 U.S.C. § 553. Section 553 provides that "No person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized . . . ." 47 U.S.C. § 553(a)(1). The complaint, however, fails to allege that there was an unauthorized interception of cable signals.

WL 2022522, at *3. In addition, where a violation was "willful" and "for purposes of direct or indirect commercial advantage or private financial gain," the court can award up to an additional $100,000 in enhanced damages for each violation of § 605(a).

1. Statutory Damages

In determining the proper amount of statutory damages, a court may consider such factors as "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant,...the financial needs and earning ability of the defendant...as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *Cablevision Sys. Corp. v. De Palma*, No. 87-CV-3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting *Cablevision Sys. Dev. Co. v. Cohen*, No. 84-CV-1155, slip. op. at 4-5 (E.D.N.Y. May 20, 1988)).

Some courts have awarded flat amounts when calculating damages. *See Home Box Office v. Champs of New Haven*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages); *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 Civ. 1042, 2006 WL 728408, at *2 (S.D.N.Y. Mar. 20, 2006) (awarding $5,000 in statutory damages); *Kingvision Pay-Per-View, Ltd. v. Ruiz*, No. 04 Civ. 6566, 2005 WL589403, at *2-3 (S.D.N.Y. Mar. 9, 2005) (awarding $5,000 in statutory damages). Other courts have assessed damages by multiplying the number of patrons who viewed the event by the amount an individual would pay to view the program at home on a pay-per-view channel. *See Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding statutory damages of $50 per patron); *Cablevision Systems Corp. v. 45 Midland Enterprises*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

Plaintiff seeks the maximum statutory damage award of $10,000. Pl's Br. at 14. I find that such an award is disproportionate to the violation of the statute at issue here. Plaintiff has failed to submit any evidence regarding the amount it would have cost defendant to legally exhibit the Event. However, in a case involving similar facts plaintiff alleged it would have cost the defendant $600 to exhibit the Event in a commercial establishment with approximately 60 patrons. *See Garden City Boxing Club, Inc. v. 704 Nostrand Corp.*, No. 06 CV 4875 (CBA) (RER) (February 5, 2007). I find that an award of $2,000 in statutory damages is appropriate. This amount takes into account the pecuniary loss of plaintiff – $600 – and the financial resources, needs, and earning ability of the defendant, as well as the burden that a greater damage award would impose on the defendant. Given the default, while there is little information in the record to assess defendant's financial circumstances, I am sure that the defendant does not have the financial ability to afford a higher statutory damage award. This amount, while slightly less, is in line with other statutory damage awards I have recommended and other courts have awarded.

2. <u>Enhanced Damages</u>

Garden City also seeks enhanced damages of $20,000 on the ground that the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); Pl's Br. at 17. It appears to base this assertion not on any evidence, but rather on the theory that the Brown Sugar Club could not have managed to display the Event without some affirmative act, and that it exhibited the Event with the "purpose and intent . . . to secure a private financial gain. . .." Pl's Br. at 16.

As a threshold matter, Garden City's assertion that the violation was willful is *not* established by virtue of the default, because willfulness is an issue of damages only, not liability.

*See J&J Sports Productions, Inc. v. Louisias*, No. 06-CV-339 (ERK) (RER), 2006 WL 1662608, at *4 & n.6 (E.D.N.Y. May 16, 2006).  Moreover, as I have pointed out in another case involving a similarly situated plaintiff:

> [w]hile plaintiff alleges that defendants could only receive the Event through illegal means, this Court is not so convinced.  In other cases involving this plaintiff and others, counsel has admitted that, not infrequently, cable and satellite television providers knowingly connect commercial establishments to cable service and then bill them at residential rates without any affirmatively misleading conduct from the establishments themselves.  *Thus, it is quite possible that these defendants signed up for cable television legitimately, and through no fault of their own, were charged a residential, as opposed to commercial, rate.*

*Id.* at * 4 (emphasis added).

Further, while in some cases involving restaurants or lounges courts have awarded enhanced damages based on the suspected increase in patrons and sales of food and beverages because of the unauthorized exhibition of a boxing event, the same logic does not follow in this case.  Plaintiff has not submitted an affidavit by Murray and thus the Court has no basis to conclude that defendant secured any financial gain from the unlawful exhibition of the Event by charging a cover fee, or selling food or beverages. Thus, there is no evidence that defendant made any money as a result of exhibiting the Event, much less enough money to justify an enhanced damages award of $20,000.

In any event, I believe an award of enhanced damages is unnecessary as the statutory damage award of $2,000 will sufficiently punish defendant and deter it, and others, from engaging in such conduct in the future.

C. Attorneys' Fees and Costs

The FCA mandates the award of reasonable attorneys' fees and costs to a prevailing party. *See* 47 U.S.C. § 605(e)(3)(B)(iii). A request for attorneys' fees must be supported by "contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *DirectTV v. Meinecke*, No. 03 Civ. 3731 (JGK) (GWG), 2004 WL 1535578, at *4. (S.D.N.Y. July 9, 2004) (citing *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)). In support of its request for attorneys' fees, Garden City has submitted an affidavit from counsel setting forth the hours expended and rates charged by counsel.

Plaintiff's counsel asserts he spent 6.25 hours on this case (4.25 attorney hours and 2 paralegal hours) during the pendency of this action. Attorney's Affidavit of Costs and Fees ("Atty's Aff.") ¶ 4. The amount of time counsel claims to have spent, while not large, is too great for work that consists of submissions of boilerplate forms. Therefore, I respectfully recommend that counsel's fees be reduced by half. The hourly rates charged by counsel - $200 per hour for counsel and $75 per hour for a paralegal - seem reasonable and in line with the rates charged for comparable work in this area. *See, e.g., Garden City Boxing Club, Inc. v. Rosado*, No. 05 CV 1037, 2005 WL 3018704, at *6 (E.D.N.Y. October 6, 2005). Accordingly, I respectfully recommend that counsel be awarded $500 in attorney's fees.

I also recommend that Garden City be awarded $350 in costs for bringing this action. *See, e.g., Louisas*, 2006 WL 1662608, at *6.[3]

---

[3] Without explanation plaintiff also seeks an award of $4,500 in interest (at 9%) from September 18, 2004. *See* Atty's Aff. ¶ 5. Putting aside that there is no discussion of why plaintiff is entitled to interest of this amount, I note that pre-judgment interest is not recoverable under § 605(a). *See Kingvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59, 65 (E.D.N.Y. 2006).

III.  Recommendation

For the reasons set forth above, I respectfully recommend that the Court grant Garden City damages in the amount of **$2,850**.  Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Frederic Block within ten business days of receipt hereof.  Failure to file timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendant by May 15, 2007 at its last known address, and to file proof of service with the Clerk of the Court.

**Dated:** **May 9, 2007**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**

---

Accordingly, I recommend that plaintiff's request for interest be denied.